UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 15-47-DLB**

**DONNA HERALD**                                                                             **PLAINTIFF**

**vs.**                    <u>**MEMORANDUM OPINION & ORDER**</u>

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                    **DEFENDANT**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will affirm the Commissioner's decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 2004, Plaintiff Donna Herald applied for disability insurance benefits (DIB), alleging disability beginning on May 30, 2001. (Tr. 54-59). Plaintiff was forty-two (42) years old at the time of filing. (Tr. 54). Plaintiff alleged that she was unable to work due to the following disabling conditions: "osteo- and regular arthritis, hip and back problems, nerve problems, and high blood pressure." (Tr. 68-69).

Plaintiff's application was denied initially, and again on reconsideration. (Tr. 25-30; 33-35). At Plaintiff's request, an administrative hearing was conducted on February 27, 2007 before Administrative Law Judge (ALJ) Larry A. Temin. (Tr. 356-401). On April 10, 2007, ALJ Temin ruled that Plaintiff was not disabled, and thus, not entitled to DIB. (Tr. 24).

1

This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (Tr. 5-7).

Plaintiff then appealed to this Court and on July 9, 2008, her case was remanded because the "hypothetical mental factors chosen by the ALJ [were] not supported by substantial evidence" and the ALJ's "rejection of the treating physician's restrictions" required reevaluation. (Tr. 450-454).  On January 14, 2010, the remand hearing was conducted before ALJ Don C. Paris. (Tr. 414-427).  On February 10, 2010, ALJ Paris issued an unfavorable decision, finding Plaintiff was not under a disability and not eligible for DIB. (Tr. 427).  After the Appeals Council denied Plaintiff's request for review of ALJ Paris's decision, she again appealed to this Court. *See Herald v. Colvin*, 2:11-cv-00341-WOB-CJS.  Upon the Agency's motion, this Court remanded Plaintiff's claim once again on October 30, 2012. *Id*. at Docs. # 25, 26.  The Court instructed the ALJ to "reevaluate the opinion of Dr. Banks and discuss the effects of Plaintiff's obesity on restrictions assessed by Dr. Banks" and evaluate his opinion "pursuant to the criteria in 20 C.F.R. § 404.1527 and Social Security Ruling 98-6p." *Id*. at Doc. # 26.

On remand, Plaintiff's DIB application was denied for a third time.  ALJ Larry Temin conducted the third hearing on November 12, 2013 (Tr. 710-757) and issued an unfavorable decision on December 26, 2013. (Tr. 544-564).  Plaintiff requested review by the Appeals Council, but her request was denied on February 6, 2015. (Tr. 532-535). Plaintiff filed the instant action on January 15, 2015, alleging the ALJ's "conclusions and findings of fact ... are not supported by substantial evidence" and are "contrary to law and regulation." (Doc. # 1).  The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication.  (Docs. # 11, 13).

2

## II.  DISCUSSION

**A.     Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.*  Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.  *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis.  Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  As to

the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.  The ALJ's Determination**

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 6, 1999, the application date, through her date last insured, March 31, 2005. (Tr. 546). At Step Two, the ALJ determined that Plaintiff has the following severe impairments: obesity, lumbosacral spine degenerative disc disease, early degenerative changes of the knees, right hip mass excision, bilateral carpal tunnel syndrome, and adjustment disorder with anxious and depressed mood (chronic). (Tr. 547). At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 547-548).

At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> She could lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for up to 6 hours in an eight-hour workday, and could sit for up to 6 hours in an eight-hour workday. The claimant could only occasionally stoop, kneel, crouch and climb ramps/stairs. She could never crawl, climb ladders/ropes/scaffolds, or work at unprotected heights or around hazardous machinery. She could only occasionally perform fingering (i.e. picking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm) bilaterally. The claimant was able to remember and carry out detailed but uninvolved instructions. She could sustain concentration and attention for 2 hours at a time, and then required a rest break of five minutes. Her job could not require more than

4

> superficial and occasional interaction with the general public, co-workers or supervisors. The claimant could not work at a rapid production rate pace, and her job could not require more than ordinary and routine changes in work setting or duties.

(Tr. 549).

Based upon this RFC and relying on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was unable to perform any past relevant work. (Tr. 562). However, the ALJ noted that claimant was considered a younger individual on the date last insured and has at least a high school education and is able to communicate in English. (Tr. 562-563). Therefore, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed, and that Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the decision. (Tr. 563-564).

**C.    Analysis**

Plaintiff alleges two general errors in the hearing decision and asks this Court to reverse the disability determination and remand for immediate payment of benefits. (Doc. # 11). Specifically, Plaintiff argues that the ALJ "did not properly address the effect of Plaintiff's mental limitations on her ability to work" and "did not give proper weight to Dr. Banks'[s] treating physician opinion." (Doc. # 11, pp. 11-19). Each of plaintiff's arguments are targeted at Step 4 of the ALJ's analysis and can be characterized as follows: (1) the ALJ erred in weighing the medical opinion testimony, (2) the ALJ erred in assessing the Plaintiff's credibility, and (3) the ALJ's RFC of light work is not supported by the record. These three arguments will be addressed in turn.

5

1.   *The ALJ did not err in weighing the medical opinion testimony.*

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1502. A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*; *see also Abney v. Astrue*, Civ. A. No. 5:07-394-KKC, 2008 WL 2074011, at *11 (E.D.K.Y. May 13, 2008) (stating that one meeting is insufficient to establish an ongoing treatment relationship). A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* The Plaintiff takes issue with the ALJ's alleged failure to accord sufficient weight to the medical opinion testimony provided by Dr. Banks, a treating source, and Dr. Eggerman, a non-treating source, . The Court will consider each of these opinions in turn.

   a.   **Dr. Banks**

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of

the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.* The ALJ must provide "good reasons" for giving less than controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Specifically, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996).

The "treating physician rule" only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 CFR § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010).

The Plaintiff argues that the ALJ erred by failing to give Dr. Banks's opinion, as a treating source, controlling weight. Dr. Banks opined that Plaintiff would be limited by several of her conditions and determined that "Plaintiff was not capable of performing more than sedentary exertion." (Tr. 561). Specifically, Plaintiff claims that Dr Banks's lifting, standing, and walking restrictions are "supported by objective evidence" and "consistent

7

with the evidence of record," and thus, deserve controlling weight. *Id*. at 17. The Plaintiff also takes issue with the ALJ's decision to give "significant weight" to the opinion of Dr. Brahms, who opined that Plaintiff was capable of performing light exertion. Plaintiff challenges Dr. Brahms's opinion because it "only pertains to Plaintiff's knees," is not supported by substantial evidence, and because Dr. Brahms's "has only a limited license to practice medicine." *Id*. at 18-21.

Despite Plaintiff's claims, the ALJ thoroughly considered Dr. Banks's opinions. While the ALJ found that some of Dr. Banks's opinions were not entitled to controlling weight, many of his restrictions were incorporated into the RFC, including the following restrictions/limitations: sitting for a total of six hours over an eight-hour workday; climbing ladders, ropes, and scaffolds; working around hazards such as heights or dangerous machinery; occasional kneeling; and occasional crawling. The RFC does not incorporate Dr. Banks's limitation on sustained sitting to one-half hour because the ALJ determined that opinion was inconsistent with the record. Specifically, the ALJ considered the opinions and observations of two non-treating sources – Dr. Glaser and Dr. Eggerman – who both noted that the Plaintiff appeared to be comfortable and did not display pain behaviors while sitting. (Tr. 556).

The ALJ also declined to incorporate Dr. Banks's complete restriction on postural activity because it was not supported by substantial evidence. (Tr. 557). The objective medical evidence showed "grossly symmetrical lower extremity motor strength," "normal gait and station," and "no evidence of knee instability," as well as only "mild osteoarthritis changes in the lumbar spine, with full lumbar flexion and good spiral range of motion overall," which the ALJ determined was "not supportive of restriction on postural activity."

*Id*. Because Dr. Brahms's postural limitation to "occasional activity" was consistent with the record evidence, the ALJ accorded significant weight to Dr. Brahms's opinion regarding Plaintiff's ability to balance, stoop, and crouch. *Id*.

Similarly, the ALJ did not incorporate Dr. Banks's lifting limitation into the RFC. The ALJ noted that "Dr. Banks completed his medical assessment for work activity on March 18, 2005, which was only seven days after the claimant's right carpal tunnel release surgery." (Tr. 558). The ALJ relied on the lack of issues shown in Dr. Banks's later treatment notes, repeat x-rays of the right wrist and hand which were negative for any issues, Plaintiff's report of a "new issue" of right wrist tenderness to Dr. Gaines in 2006, and the subsequent treatment record which indicates that the claimant's right grip strength improved. The ALJ then concluded that Dr. Banks's "work activity limitation of lifting two pounds occasionally and no frequent lifting, due to hand osteoarthritis and MCP swelling" was not supported by the evidence. *Id*. Therefore, Dr Banks's lifting restriction was not incorporated in the RFC.

Dr. Banks's standing limitation was also given little weight because the ALJ found it was inconsistent with the evidence of record. Dr. Banks opined in his functional assessment that "due to osteoarthritis in the knees, the claimant was limited to one hour of standing/walking over an 8-hour work day, and ten minutes of continuous standing." *Id*. at 559. Contrary to Dr. Banks's opinion, the evidence showed "that the claimant was treated with analgesic medication after her reported September 2003 fall," "physical examinations consistently showed normal gait, generally normal range of motion other than decreased nee flexion, and no evidence of instability." *Id*. Furthermore, Plaintiff had "minimal knee tenderness on examination" and "mild degenerative changes on x-ray" and

reported that "her knee pain had improved" to Dr. Banks in February 2005. *Id.* Instead, the ALJ gave significant weight to Dr. Brahms's opinion that Plaintiff should have been capable of performing light work because the opinion was consistent with the medical evidence.

In short, the ALJ specifically stated that Dr. Banks's opinions were not entitled to controlling weight. (Tr. 561). Despite being a treating source, the ALJ found that Dr. Banks's "physical functional opinion [was] found to be overly conservative and inconsistent with the overall medical record." Thus, several of his opinions regarding particular restrictions were given less weight and not incorporated into the RFC. However, the ALJ did not ignore all of Dr. Banks's opinions, and instead, identified which portions of Dr. Banks's opinions he would still consider and incorporated many of those in the RFC. Because the ALJ explained how he arrived at that determination, citing to several inconsistencies between Dr. Banks's opinions and the overall record, and specifically considered the factors required by 20 C.F.R. §§ 404.1527(c) - 416.927(c), and Soc. Sec. Rul. 96-2, he has satisfied the "treating physician" rule and its "good reasons" requirement. Accordingly, the ALJ engaged in the proper analysis and reached a conclusion that is supported by substantial evidence, and the Court finds no error in his treatment of Dr. Banks's opinion.

### b.     Dr. Eggerman

The 20 C.F.R. § 404.1527(d)(2) factors discussed above also guide the ALJ in determining how much weight to accord a non-treating physician's opinion. *Davenport v. Astrue*, No. 3:06-cv-402, 2008 WL 641131 at *6 (S.D. Ohio March 4, 2008). Accordingly, the ALJ must consider: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of

the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*; 20 C.F.R. § 404.1527(d)(2).

Plaintiff claims that the ALJ improperly weighed Dr. Eggerman's opinions regarding Plaintiff's psychological impairment and "rejected some of Dr. Eggerman's conclusions as not wholly consistent with the weight of the evidence." (Doc. # 11, p. 11-12). The Plaintiff also alleged that the ALJ erred by failing to fully accept Dr. Eggerman's opinions because he was "the only physician who actually examined Plaintiff for a psychological impairment." *Id*. Furthermore, the Plaintiff asserts that the ALJ improperly relied upon a "single statement in a progress note" where Plaintiff reported walking her dog four to six blocks per day, as well as her ability to perform some household chores, in rejecting "some of Dr. Eggerman's conclusions as not wholly consistent with the weight of the evidence." *Id*. at 12-13. In support of her argument, Plaintiff cites to case law from other jurisdictions establishing that "a claimant's ability to perform limited and sporadic tasks does not mean that she is capable of full-time employment" and that "survival is not the same as work ability." *Id*. The Plaintiff also claims that it was "improper for the ALJ to rely on" the single statement regarding dog walking, which was in a "progress note, found early in the record" and is "contradicted by numerous other progress notes." *Id*. at 13.

However, the ALJ detailed and discussed Dr. Eggerman's examination of Plaintiff and the resulting opinions, and accorded significant weight to his opinions regarding the effect of Plaintiff's mental limitations on her ability to work:

> [T]he record references the claimant's tearfulness at Dr. Eggerman's evaluation, and subsequent tearfulness when discussing stressors at home, which supports Dr. Eggerman's opinion for moderate limitation in the claimant's ability to tolerate normal work stressors. Dr. Eggerman also assessed the claimant's overall concentration as fair at his evaluation. Dr.

> Eggerman was able to evaluate the claimant in-person, and issued a detailed report supporting his conclusions. His opinion is given significant weight in concluding that the claimant is subject to moderate limitation in concentration, persistence, or pace.

(Tr. 562). In fact, the Court is unable to determine which of Dr. Eggerman's opinions the ALJ allegedly rejected. Both mental functional limitations found by Dr. Eggerman were incorporated into the RFC. (Tr. 560). Moreover, because the ALJ explained how much weight he gave to the opinion of Dr. Eggerman, a non-treating source, and because he detailed his reasons for doing so in accordance with 20 C.F.R. § 404.1527(c), the Court finds no error in this portion of the ALJ's analysis.

Furthermore, the Plaintiff's assertion that "the ALJ did not consider these limitations in [Plaintiff's] ability to sustain work" is repudiated by the record. The ALJ included in the RFC that the Plaintiff "was able to remember and carry out detailed but uninvolved instructions;" "could sustain concentration and attention for 2 hours at a time, and then required a rest break of five minutes;" that her "job could not require more than superficial and occasional interaction with the general public, co-workers, and supervisors;" that Plaintiff could "not work at a rapid production rate pace;" and that her job "could not require more than ordinary and routine changes in work setting or duties." Accordingly, the ALJ sufficiently considered Plaintiff's mental health limitations, established through Dr. Eggerman's opinion, and incorporated them in the RFC.

### 3.  *The ALJ did not err in assessing Plaintiff's credibility.*

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2 (July 2, 1996).

When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individuals' ability to do basic work activities." *Id.*

When the Plaintiff's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including lab findings, information from treating physicians, Plaintiff's complaints of symptoms and other relevant evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4). After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. "Blanket assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

Plaintiff complains that the ALJ "opted to find Plaintiff less than fully credible regarding her psychological impairments in part because Plaintiff was never involved in mental health treatment" and points to explanations and excuses in the record for Plaintiff's lack of treatment. (Doc. # 11, p. 14). Plaintiff also claims that the ALJ's decision to

13

discredit Plaintiff's testimony was improper and that the ALJ failed to appropriately consider Plaintiff's psychological "limitations in her ability to sustain work." *Id*. However, the record belies these assertions.

At Step 4, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably expected to cause the alleged symptoms." (Tr. 555). However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." *Id.* The ALJ further explained that Plaintiff's testimony regarding her symptoms and limitations was inconsistent with the medical evidence:

> The claimant testified in 2007 that before her date last insured, she hardly walked at all, did not even sit very much, and spent most of the day lying in bed watching TV. She testified at the current hearing that in 2005 she did not want to get out of bed. However, the claimant said in June 2004 that she was getting outdoors more. She told Dr. Eggerman in January 2005 that she was able to drive and shop alone, made beds and cleaned up the house with the exception of running the sweeper, and talked to friends on the phone.
>
> The claimant also testified in 2007 that she did not go to physical therapy for knees or hands because she could not afford it. She testified that she was not able to exercise. The record indicates that Dr. Bilbo stated after the claimant's carpal tunnel surgery that she would be instructed in a home program to improve hand and wrist function, the claimant never followed through with therapy. In a rheumatology evaluation in 2007, it was noted that the claimant did not exercise and in general was very inactive. The overall record is not consistent with the level of limitation the claimant alleges through March 2005, and does not support a condition of disability within the meaning of the Social Security Act and Regulations.

(Tr. 562) (internal citations omitted). As detailed above, the ALJ found that Plaintiff manages many activities associated with daily living, such as shopping, driving, and completing other household chores and errands. (Tr. 562). The ALJ further determined that Plaintiff's ability to perform these daily activities and lack of treatment did not comport

14

with Plaintiff's allegations of pain and severity. Therefore, the ALJ concluded that Plaintiff's statements regarding the intensity, frequency, and limiting effects of her symptoms were not entirely credible. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 4. *The ALJ's RFC assessment is supported by substantial evidence.*

A RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34474, 34475 (Jul. 2, 1996). Stated another way, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that she finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff broadly alleges that the ALJ erred by failing to find her disabled since substantial evidence supports her disability and that the "ALJ's RFC for light work is not supported by the record." (Doc. # 11, p. 20). Of course, it does not matter if the substantial evidence does support her disability, so long as it also supports a finding of "not disabled." *Her*, 203 F.3d at 389-90 (holding that "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could

reasonably support the decision reached") (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also Listenbee*, 846 F.2d at 349. As a result, it does not matter if Plaintiff, or even this Court, believes substantial evidence supports a different disability determination. All that is required of the ALJ is that he render a decision that is supported by substantial evidence. The ALJ has done so here.

At Step Four of the analysis, the ALJ carefully reviewed the record and found that Plaintiff was capable of doing light work with the limitations specified. (Tr. 549). The ALJ carefully went through each of Plaintiff's impairments and described why they were not disabling. (Tr. 549-564). He incorporated many limitations suggested by Plaintiff's treating physician, detailed why other non-treating sources' limitations were incorporated instead of Plaintiff's treating physician's, considered the objective medical evidence, and properly discounted Plaintiff's subjective symptoms to the extent that they lacked credibility. Because the ALJ incorporated the limitations that he found credible in the RFC and properly weighed the medical opinion testimony, there is no error. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence.

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 13) is hereby **GRANTED**; and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 7th day of June, 2016.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Covington\15-47 Herald MOO.wpd